ADELINE S. LINCOLN *vs.* ANNA L. GAY.

Worcester.　September 30, 1895. — November 26, 1895.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Bailment — Negligence of Bailee — Action — Estoppel — Contract — Acceptance of Offer.* ·

If cloth is delivered to a dressmaker to be made into a dress, without any instructions, she is held to that degree of skill and care which will enable her to do the work intrusted to her in a reasonable and proper manner; and an action may be maintained against her for making up the dress on the wrong side of the cloth, if, in the exercise of a proper degree of skill and care, the dress ought not to have been made up in that way.

In order to establish an estoppel on the part of the plaintiff in an action, it is necessary that there should be evidence tending to show that the defendant was induced by the plaintiff's conduct to do something different from what he would otherwise have done, and that the plaintiff knew or had reasonable cause to know that the defendant would so act.

If an offer by one party to a contract of bailment is varied in its acceptance by the other party, and the latter's proposition is not accepted before it is withdrawn by him, he is not bound thereby.

CONTRACT, to recover for injury to the plaintiff's dress pattern in making the same up on the wrong side of the cloth. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

The defendant, who was a dressmaker, testified that the plaintiff instructed her to make up the dress on the wrong side of the goods, and introduced evidence showing that the plaintiff tried on the garment at three different times while it was being made up.

The garment was sent by the defendant to the plaintiff's residence on October 20, 1894, and the defendant testified that on October 23 the plaintiff came into her rooms and said to her that there were two mistakes in her suit; that the interlining had been omitted, and that the goods had been made up wrong side out; that the defendant said to her, " I am willing to put the interlining in, but I can't see how you can blame me for something you have selected yourself "; and that the plaintiff decided that if the defendant would put the interlining in, and fix

the collar, she would accept the suit, and she said, " You may send up for it to-morrow or next day."

The defendant also introduced the evidence of one Creesey, who was in her employ, and who testified in corroboration of the defendant's evidence as to the conversation with the plaintiff. It appeared that two or three days after this conversation, and before the defendant sent for the dress, the plaintiff wrote her a letter stating that she could not use the dress, and requesting a settlement.

The plaintiff testified that she delivered the material to the defendant without any instructions as to the side upon which the cloth was to be made up; that she left the whole matter of the making of the dress to the defendant; and that while she was trying the same on she made no examination of it and took no especial notice of it, and did not notice that the dress was being made up wrong side out until it was sent to her house. She also denied that she ever told the defendant that, under certain conditions, the dress would be satisfactory, or that she would accept it.

The defendant asked the judge to instruct the jury as follows:

" 1. If the plaintiff delivered the dress pattern to the defendant to be made up, without instructions, and the defendant acted in good faith, understanding that the dress should be made up on the unfinished side, and the plaintiff saw the dress, and fully understood that it was so being made up when the defendant was making it up, she would be estopped to refuse acceptance of the dress, or to refuse to pay for the labor and material put into it by the defendant.

" 2. If the plaintiff, after the dress was completed, agreed to accept the same upon the changes suggested, as testified to by the defendant, she cannot recover in her action."

The judge refused to give the instructions requested, and instructed the jury, among other things, as follows:

" The claim on the part of the plaintiff is that there was no express stipulation with reference to which side of this cloth should be made up. It is a question for us, then, what stipulation the law will imply under such circumstances.

" Perhaps I can simply illustrate it. If any one of us should take a piece of broadcloth to our tailor and ask him to make it

into a coat, and he should undertake to do so and nothing more was said about it, the law would carry with the contract which we made the stipulation that he should make it into a coat, using due and proper care and skill and proper workmanship, and that would involve putting the cloth in right side out.

"It is the claim on the part of the defendant that, while this suit was being made, the plaintiff was aware of the fact that it was being made up wrong side out. What is the significance of that fact, if it be a fact? If you should determine that, upon various occasions when it was being fitted, the way it was being worked up came to the knowledge of the plaintiff, then that is a circumstance which you should take into consideration upon the direct question whether the original agreement was that it should be made up wrong side out; and it would also be some evidence, not conclusive, that she agreed to modify the original contract and to accept the work as being made up. If the contract originally was to make it up right side out, whether by express or implied directions, it was entirely competent for the plaintiff at any time to modify that contract by agreeing with the defendant that it might be made up on the wrong side, and if you should find that, upon the several occasions when trying it on, it was called to her attention, and she knew it was being made up wrong, that would be some evidence, not conclusive, but would be some evidence that she agreed to modify the original contract and to accept the work as being made up. But it may be evidence also upon the proposition, as claimed by the defendant, that the original agreement was that it should be made up wrong side out.

"Of course you must be satisfied she knew of the fact when she was trying it on, that it was being made up in a wrong manner.

"If you determine that she did know it was being made up this way, you may take that into consideration on the question whether she modified her original contract, or whether she made the original contract as claimed by the defendant."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. A. Gile & C. T. Tatman,* for the defendant.

*C. M. Thayer,* for the plaintiff.

MORTON, J. If the dress was delivered to the defendant by the plaintiff without any instructions, the defendant, being a bailee for hire, was held to that degree of skill and care in the particular occupation in which she was engaged, which was that of a dressmaker, which would enable her to do the work intrusted to her in a reasonable and proper manner. *Jackson* v. *Adams*, 9 Mass. 484. Story, Bailments, § 431, and cases cited. Her understanding that it was a proper way to make the dress up wrong side out would be immaterial, therefore, if in the exercise of a proper degree of skill and care the dress ought not to have been made up in that way.

So much of the instruction requested as related to the matter of estoppel was also clearly erroneous. It made the plaintiff's knowledge that the dress was being made up wrong side out the sole test. But in order to justify the jury in finding an estoppel, it was necessary that there should be evidence tending to show that the defendant was induced by the plaintiff's conduct to do something different from what she would otherwise have done, and that the plaintiff knew or had reasonable cause to know that the defendant would so act. *Tracy* v. *Lincoln*, 145 Mass. 357. *Stiff* v. *Ashton*, 155 Mass. 130. The instructions requested omitted this element. We doubt also whether the evidence would have warranted a finding that there was an estoppel. The jury have negatived the claim of the defendant that the plaintiff gave her instructions to make the dress up wrong side out. The defendant had begun to make the dress before the plaintiff saw the garment, and it does not appear that she was induced to make it up wrong side out in consequence of anything that the plaintiff said or did, or omitted to say or do.

The remaining instruction was also rightly refused. The defendant offered to put the interlining in, and the plaintiff thereupon said that if she would put the interlining in and fix the collar she would accept the suit. It does not appear that this proposition was accepted by the defendant before it was withdrawn by the plaintiff.

We discover no error in the instructions as given, or in the refusals to rule as requested.

*Exceptions overruled.*