METROPOLITAN COAL COMPANY *vs.* BOUTELL TRANSPORTATION AND TOWING COMPANY.

Suffolk.    January 18, 1904. — April 1, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Contract,* What constitutes.   *Waiver.   Words,* "From."

The defendant in a letter to a ship broker dated September 26, offered to furnish a tug and coal barges at the price of $225 per day, "beginning before November 1st, and continuing until May 1st." The plaintiff, a coal company, in a letter to the ship broker dated September 28, stated that it accepted the offer "from November 1st to May 1st," otherwise reciting it in accordance with its terms. The ship broker wrote to the defendant that its offer had been accepted by the plaintiff "from November 1st or earlier to May 1st." Later the defendant withdrew from the transaction and was sued by the plaintiff for breach of contract. *Held,* that there was no contract; that the letter of the plaintiff materially varied the terms of the defendant's offer and was not an acceptance but a new offer which the defendant never accepted, and the letter of the ship broker to the defendant, if it purported to report an acceptance of the defendant's offer in accordance with its terms, did so without authority from the plaintiff. No question of ratification was raised.

A period "from" a certain day when there is nothing to show the contrary excludes the day named.

To constitute a waiver the act relied upon as such must have been done with knowledge of the thing to be waived.

CONTRACT for breach of an alleged agreement for the charter of a tug and coal barges.   Writ dated December 26, 1899.

In the Superior Court the case was tried before *Mason,* C. J.,

without a jury. The correspondence relied on by the plaintiff as constituting the contract sued upon was as follows:

"Boston, Sept. 26, 1899. Messrs. Walter, Friend & Co., Boston, Mass. Dear Sirs, — We will agree to furnish four or five barges that will insure cargoes at a satisfactory rate and carry not less than 8000 tons of coal and a first class tug boat of not less than 1000 H. P. to tow these or other barges, our option of substituting one or more barges for others, without inconvenience to charterers, to carry coal from New York, Philadelphia, Newport News, Norfolk or Baltimore to Boston, beginning before November 1st, and continuing until May 1st, 1900. The price per day for the above tug and barges to be $225, to be divided proportionally, charterers to load, trim and discharge all cargoes and furnish the tug with Bunker coal at their expense. Tug to be at all times at the service of charterers to do whatever towing they may require, in addition to towing the above barges. Very truly yours, Wm. H. Mack, Manager. Above offer is good until Thursday noon."

"Boston, Mass., September 28, 1899. Messrs. Walter, Friend & Co., No. 129 State Street, Boston, Mass. Dear Sirs, — We herewith accept your offer to furnish us with four (4) or five (5) Barges that will insure cargoes at satisfactory rate, and carry not less than eight thousand (8000) tons of coal; and also a first class tow-boat of not less than one thousand (1000) horse power, to carry coal for us from November 1st, 1899, to May 1st, 1900, from New York, Philadelphia, Newport News, Norfolk and Baltimore to Boston.

"All the above as per conditions and terms named in option to you from W. H. Mack, Manager, dated September 26th, 1899. The above is to be subject to usual conditions of charter. Yours truly, Metropolitan Coal Co., by Edward Hamlin, President."

"Boston, Sept. 28th, 1899. William H. Mack, Manager, Boston, Mass. Dear Sir, — Your offer made to us to furnish four or five barges and a tug to transport not less than 8000 tons of coal from New York to Norfolk, Newport News and Baltimore to Boston from November 1st or earlier to May 1st, has been accepted by the Metropolitan Coal Co. to whom we made the offer in accordance with your offer to us at $225 per day, they to load, trim and discharge cargoes and furnish and

pay for Bunker coal for the tug.   Very truly yours, Walter, Friend & Co."

The telegram referred to near the end of the opinion was as follows: " Oct. 7, To Walter, Friend & Co., State St., Boston. Consider deal off.   Will be in my office Monday.   Wm. H. Mack."   Another telegram on the same day was as follows: " Cleveland, O., Oct. 7/99.   Walter Friend Co., Boston.   Charter with you was conditioned on my being able to get tug & Barges from here down, which cannot do.   Will be in my office on Monday.   Wm. H. Mack."

Walter, Friend and Company were ship brokers doing business in Boston.   William H. Mack was general manager of the defendant, having an office in Boston.

At the close of the evidence the defendant requested the judge, among other things, to rule: " First.   That on all the evidence no contract has been established between the plaintiff and the defendant as declared on, and the plaintiff cannot recover in this action.   Second.   That the purported acceptance, dated September 28, 1899, in writing, by the Metropolitan Coal Company (Exhibit 2), is not in the same terms as the offer and does not constitute a valid acceptance of the offer. . . . Fourth. That a statement of a party that there is no contract by reason of the offer having been conditional does not, in case the offer was not conditional, preclude the party from defending on the ground that there was no acceptance in the terms of the offer or meeting of minds, and therefore no contractual relation."

The judge refused to make any of these rulings, but upon the fourth request ruled as follows: " The court does not rule that in every case a party by the statement suggested would waive the other defence, but that in this case, on the evidence, the court finds that the trivial variation in language, if amounting to a variation in substance, was waived."

The judge found for the plaintiff in the sum of $50,000, which was the *ad damnum* of the writ; and the defendant alleged exceptions.

*E. P. Carver & A. C. Burnham*, for the defendant.

*R. M. Morse*, (*C. E. Hellier* with him,) for the plaintiff.

BRALEY, J.   If it be assumed that the plaintiff succeeded in establishing the fact that William H. Mack was the general

agent of the defendant and as such had authority to make an agreement by which it would be bound, the more important and decisive question between the parties remains to be decided, and that is whether the evidence was sufficient as a matter of law to prove the contract set out in the declaration.

The contract, if any, was made by an offer and reply in writing, and the only variance is the time referred to in each, when the agreement was to take effect, and the defendant was to become entitled to the daily price to be paid by the charterer.

No uncertainty appears in the language of the offer. The words " beginning before November 1st, and continuing until May 1st, 1900 " were used in the proposal dated September 26, 1899, and may be construed as meaning that at any time after September 26 and before November 1 the defendant was ready to make an agreement to charter its tug boat and barges for continuous service, ending May 1 of the following year.

Whatever business plans or projects may have been contemplated by the manager or agent of the defendant it does not become important to consider, as he had a right to fix in his offer the date when the proposed service should commence.

There were no negotiations directly between the parties, but whatever was done took place through a firm of ship brokers to whom the original offer was addressed, and by them it was communicated to the plaintiff.

On September 28, 1899, the plaintiff sent to the brokers an alleged acceptance, in which the conditions contained in the offer were stated, with the exception of the time in which the contract was to be performed. Instead of " beginning before November 1st, 1899 " the letter of the plaintiff fixed the period of service " from Nov. 1st, 1899, to May 1st, 1900." This letter was not sent to the defendant, but the brokers were content to inform its agent on the same day by letter that the offer had been accepted, and giving the date of performance as being " from November 1st or earlier to May 1st." The transaction remained in this form and stopped at this point, as there is no evidence of any further steps being taken by them.

While the intent of the parties to the proposed contract should not be defeated by any over-refined or too technical construction of the language used, an acceptance that varies

from the offer, at least in any of its substantial particulars, cannot be deemed an assent to the proposition to which it is sent in reply, but it is to be classed as an independent proposal.

Where a contract is in writing the agreement is to be found from the language used. In a contract formed by a written offer, followed by an acceptance in writing, it is the acceptance which furnishes the required element of agreement, and indeed binds the offerer to perform his undertaking according to its terms, because the offer has now become a contract by the mutual understanding and assent of the parties to what is to be performed.

The contract is made and completed by an offer, followed by a simple unconditional acceptance. *Stoddard* v. *Ham*, 129 Mass. 383, 385. *Hussey* v. *Horne-Payne*, 8 Ch. D. 670.

When the defendant offered to charter its vessels for a definite time, clearly stated, it was not an assent to or acceptance of its offer for the plaintiff to name another period, even though the date of termination in the contract proposed and that stated in the reply was the same. *Harlow* v. *Curtis*, 121 Mass. 320. *Lincoln* v. *Gay*, 164 Mass. 537, 540. *Horne* v. *Niver*, 168 Mass. 4. *Eliason* v. *Henshaw*, 4 Wheat. 225. *Minneapolis & St. Louis Railway* v. *Columbus Rolling Mill*, 119 U. S. 149. *Hyde* v. *Wrench*, 3 Beav. 334.

Assuming without deciding that the time named, "from November 1st or earlier to May 1st," may have been the same in legal effect as "beginning before November 1st, and continuing until May 1st, 1900," it is enough to say for the purpose of this case that it was not the proposition submitted to the brokers by the plaintiff, or transmitted by them to the defendant.

The law that an undisclosed principal may avail himself of a contract entered into for his benefit by his agent when acting within the limits of his authority, or may ratify his unauthorized acts, is undisputed, but the plaintiff puts its case on the contract claimed to have been made by the offer, followed by its letter of acceptance, and not on the letter of the brokers, which in fact conveyed a different proposition from that which they were authorized by their principal to transmit. The brokers were not the general agents of the plaintiff, and their authority to act rested on the terms of the letter, which did not become an ac-

ceptance until either it had been sent, or its contents communicated to the defendant by the plaintiff's authority. *Coddington* v. *Goddard*, 16 Gray, 436, 444, 445. *Morris* v. *Brightman*, 143 Mass. 149, 151. This was the ground on which recovery was sought, and the trial proceeded on the theory that there was no substantial variance between the offer and the reply. Whether the plaintiff upon ratification of the action of the brokers in its behalf could have maintained an action against the defendant, is a question that was not raised, and is not before us.

On the face of the papers the contracting parties never assented to the same period of time in which the agreement was to be performed, and no contract was established.

When the new term as to time was introduced, the letter of the plaintiff cannot be treated as an acceptance, but must be considered as a new offer or counter proposal, and in order to become a contract would have to be accepted by the defendant. *Gowing* v. *Knowles*, 118 Mass. 232, 233.

To meet this difficulty, the plaintiff is obliged to resort to a construction that treats this difference as one so immaterial in its nature that it is not within the principle discussed. The right to begin the term of service is put by the defendant at any time before November 1, but the letter of the plaintiff fixes the date as from November 1. If the most favorable construction is given to this interpretation, and the reply is considered as a formal acceptance, the period would begin apparently November 2, as there is nothing to show that it was intended to include the day from which the time of service began to run. *Walker* v. *John Hancock Ins. Co.* 167 Mass. 188, 189, and cases cited.

Or the same legal proposition may be put in another form. Under the offer, the latest day would have been October 31; by the acceptance, the earliest, November 2, when the time of performance became of binding force and effect. A variation of two days seems to be unavoidable, and their value in money is substantial and measures the pecuniary difference between the offer and the acceptance. Such a difference, if insisted upon, cannot be treated as of a trifling or immaterial character.

It became incumbent upon the plaintiff to go still further, and it evidently contended at the trial that there had been a waiver on the part of the defendant of so much of the offer as

related to the time when the term of service should begin, and the ruling given "that in this case, on the evidence, the court finds that the trivial variation in language, if amounting to a variation in substance, was waived," was wrong.

A waiver must be found, if at all, either in the language or conduct of William H. Mack, the general manager of the defendant.

From the uncontradicted evidence it is plain that he never saw or knew of the contents of the communication of the plaintiff to the brokers, and after their letter to him no further correspondence or interviews took place either with them or the plaintiff.

The telegrams sent by him could not therefore be considered as a waiver of any part of the offer; neither can the fact that certain forms of a proposed charter party were shown to him on September 27, to which he made no objection, but only asked if the president of the plaintiff corporation would sign, aid the plaintiff in this contention, for the reason that the brokers, after obtaining the president's assent, never disclosed that fact to him.

In order to hold that he waived the variation and agreed to the substitution proposed by the acceptor, it must appear that he knew of it.  *Fort Payne Coal & Iron Co.* v. *Webster*, 163 Mass. 134, 137.  *Holdsworth* v. *Tucker*, 143 Mass. 369, 376.

For the doctrine of waiver rests on the ground that the party to be bound knows of the change, and intentionally by express words, or impliedly by his conduct, assents to a modification or abandonment of his legal rights which are to be affected, and thereafter the parties proceed upon the substituted or new agreement thereby created.  *Kent* v. *Warner*, 12 Allen, 561, 563.  *Rogers* v. *Rogers*, 139 Mass. 440, 443.

The result is that the parties are finally left to the documentary evidence alone for a determination of their contractual relations, and as there had been no acceptance the defendant had not become bound by any contract with the plaintiff.  It follows that the telegram of October 7, directed to and received by the brokers, operated as a recall of its offer and terminated their agency.  *Lincoln* v. *Gay*, 164 Mass. 537.

The first, second and fourth rulings requested by the defendant should have been given.

*Exceptions sustained.*