**In re ARLMONT SERVICES, INC., Debtor.**

**Bankruptcy No. 85–1424–HL.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 21, 1987.

Whitton E. Norris, III, Fred A. Kelly, Jr., Peabody & Brown, Boston, Mass., for debtor.

Leonard M. Salter, Wasserman & Salter, Boston, Mass., for claimant.

### MEMORANDUM ON RUGS

HAROLD LAVIEN, Bankruptcy Judge.

The claimant, Lindley Fosbroke, ("Fosbroke") in answer to an advertising flier she received in the mail during June of 1983, hired the debtor to clean the carpets in her home. The claimant paid Arlmont the sum of $188 for the carpet cleaning and now contends that one room was not cleaned for which $19.85 was charged. The debtor offered no contradictory testimony or evidence. While the debtor's employees were so engaged, the claimant

gave them three rugs to clean. The rugs were wool, hand made, hand dyed, and imported, two from Africa and one from Poland. There was no discussion as to where or how the rugs were to be cleaned but at least one of the rugs had a label indicating it was hand-woven wool from Africa, and Fosbroke testified that she so described them to debtor's employees.

On August 15, 1983, at a cost of $56.77, the three rugs were returned in unacceptable condition. The two African rugs were matted, hard, dense, and shrunken out of shape, and they were not only not clean, but had a coffee-shaded discoloration. The Polish rug had the same problems plus the color had run, and the colored squares of which it was made had shrunk and separated. All three rugs had tangled bedraggled fringe. There was no testimony disputing the rugs' condition, probably because nobody representing the debtor had bothered to go to see them when the claimant was reluctant to send them back to the debtor. None of the rugs were brought into court.

The debtor's president testified that the debtor cleaned 1000 to 1500 rugs a year and 50,000 to 60,000 carpets in customers' homes. The mailing from which debtor was hired only mentioned a steam-cleaning process for cleaning carpets in customers' homes. No mention was made of how rugs removed from customer's home were to be cleaned. In fact, the debtor did not, itself, do any rug cleaning but subcontracted out that work to The Carpet Craftsmen of Woburn with whom it worked for four or five years. A Mr. Kershner, now deceased, operated this rug cleaning plant which employed a wet sub-steam cleaning process.

The claimant offered no expert evidence as to the proper method of cleaning this type of rug, while debtor offered, as experts, both the president of Arlmont, with an extensive rug cleaning experience, and one Charles Rice who sells rug cleaning equipment and conducted a school of carpetology which taught rug cleaning techniques. Both testified that the so-called steam cleaning actually used water generally at 140° Farenheit pumped into the carpet and vacuum removed. That the equipment could not operate at the 212° Farenheit, the temperature necessary for actual steam. That this was a commonly accepted method of cleaning hand-woven, hand-dyed, wool rugs, and that to determine whether the problem was caused by a defect in the cleaning process or a weakness in the dyes or the wool, the rug had to be tested at the factory. When the claimant refused to return the rugs to the debtor, the debtor took no further steps to resolve the problem, to ascertain its extent, or even to answer communications from or on behalf of its customer. Neither of the witnesses had seen these particular rugs.

■ A cleaner may not be a guarantor that the standard procedure for cleaning will not cause shrinkage, color run, or other problems when there is nothing to put him on notice that special precautions or procedures are necessary. *Perrault v. Circle Club*, 326 Mass. 458, 95 N.E.2d 204 (1950); *Adeline S. Lincoln v. Anna L. Gay*, 164 Mass. 537, 42 N.E. 95 (1895); *Willett v. Rich*, 142 Mass. 356, 7 N.E. 776 (1886), *rev'd on other grounds, Knowles v. Gilchrist*, 362 Mass. 642, 289 N.E.2d 879 (1972). Here, such a special condition existed. The cleaner's employees were told that these were imported, hand-woven, hand-dyed, wool rugs. At least one rug had what was described as a crude label identifying it as an African hand-woven, hand-dyed rug. The debtor's president testified to the common problems of foreign dyes not being set and wool not being pre-shrunk. In the face of such knowledge, some pre-cleaning testing was indicated and if the debtor was not equipped for cleaning this type of product, to have so notified the customer prior to cleaning. *Jackson v. Adams*, 9 Mass. 484 (1813); *Mass. v. Viemont Rug & Carpet Cleaning Co.*, 173 N.Y.S.2d 963, 9 Misc.2d 959. I, therefore, find the debtor liable for failing to exercise proper care in the cleaning of these rugs.

■ That raises the difficult issue of damages. Certainly, the $56.77 charged for the cleaning should be part of the damages. As to the three rugs, the only testi-

mony as to value was the claimant's uncorroborated testimony that she bought the rugs in now defunct stores, had no receipts or checks to substantiate her testimony that they were bought for cash in 1979 or 1980, for $1,000.00, $300.00, and $800.00, respectively. There was no evidence as to their value at the time they were sent out to be cleaned, in June of 1983, except for general statements by the claimant that they would have appreciated in value and could not be replaced for the same money. No evidence that they were, or needed to be, replaced except for, possibly, the Polish rug. In fact, claimant's testimony was that she subsequently had them cleaned—we are not told by whom or at what cost; that the two African rugs were essentially restored to their original condition, except for some shrinkage, not further quantified. The further cleaning could not correct the color runs in the Polish rug. The claimant testified that the rugs had received very little wear prior to the debtor having cleaned them. I find this hard to accept since the claimant admitted the rugs had been previously cleaned and yet, between that cleaning and the debtor's cleaning, they had again become so dirty that when they were returned after their abusive so-called steam cleaning, they were allegedly still so dirty, that the claimant complained to the driver returning them as she merely inspected a corner of the rugs. I note, incidentally, that these allegedly valuable and delicate rugs were given to a cleaner with whom she had no previous experience and discovered by responding to an advertisement received in the mail, rather than the cleaner who, supposedly, had previously satisfactorily cleaned them. As to the two African rugs, I do not find that the claimant has sustained her burden of proof as to the value of the rugs before and after cleaning. However, as to the Polish rug, I assume it, in fact, did become worthless after cleaning because of the running colors and, although the evidence is weak, will find its value to be $800 prior to cleaning.

I, therefore, find for the claimant as damages, $56.77, the charge for the cleaning, $19.85, the charge for the nonperformance of one room cleaning, and $800 for the Polish rug.

The claimant seeks damages under Mass.Gen.Laws c. 93A, § 9(3). It is undisputed that the debtor's conduct after returning the rugs was reprehensible. No one came to look at the rugs. Calls and letters were not answered other than one request for the claimant to return the rugs for examination. When the claimant, understandably, was reluctant to do so, the debtor took no other steps to resolve the difficulty. It failed to respond to the Better Business Bureau or the Consumer Protection Division, or to counsel's c. 93A letter. All of this notwithstanding, c. 93A damages are not warranted. Chapter 93A § 9(3) authorizes the judge to award up to three, but not less than two, times the amount of actual damages if he finds a wilful or knowing violation of c. 93A, § 2, or that the refusal to grant relief on demand was made in bad faith with knowledge or reason to know that the practice complained of violated § 2. *Heller v. Silverbranch Construction Corp.*, 376 Mass. 621, 627, 382 N.E.2d 1065 (1978).

Chapter 93A § 2 brings us back to the original cleaning and an examination of any unfair business practice at that relevant time. As to that, the debtor's regular practice of subcontracting the rug cleaning, did not require special notice to the claimant, and nothing in the Attorney General's Rule 940 C.M.R. 3.16 made this conduct attain such a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce. *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. 498, 396 N.E.2d 149 (1979).

This Court reluctantly concludes that no c. 93A damages are appropriate.

The claim is allowed as an unsecured claim in the amount of $876.62.