NATHANIEL E. HARLOW *vs.* REUBEN S. CURTIS & another.

Suffolk. March 15. — Nov. 4, 1876. AMES & MORTON, JJ., absent.

The defendant agreed to buy and ship fish for the plaintiff to B. Afterwards the plaintiff requested him to ship the fish to P., and the defendant consented to do so for a certain commission, which the plaintiff refused to agree to pay; and the defendant did not send the fish. *Held*, in an action for a breach of the contract to send fish to P., that such a contract was never completed between the parties.

CONTRACT. The declaration alleged that the plaintiff contracted with the defendants to buy for him, on commission, cod-

fish in Portland, in the State of Maine, and ship the same to the plaintiff at Plymouth in this Commonwealth; and that the defendants bought the codfish, which the plaintiff directed them to ship to Plymouth, and offered to pay their cost with commissions to the defendants, but that the defendants refused to ship and deliver the fish. The answer contained a general denial, and set up that the defendants never agreed to ship fish to Plymouth.

At the trial in the Superior Court, before *Rockwell*, J., it was proved that the plaintiff, in September, 1874, called at the defendants' store in Portland, and verbally requested them to buy for him a cargo of fish, which the defendants promised to do, if they could find them. By this oral agreement, the fish were to be packed in drums for export, and shipped to Boston. The defendants testified that there was a profit in packing in drums equal to two and a half per cent., which was not denied by the plaintiff. It was in evidence that on October 15, 1874, the defendants sent the following telegram to the plaintiff: "Five hundred here. Do you want at five and four dollars? Answer." To which the plaintiff replied by telegram, "Secure the fish, if good, at price named." The defendants thereupon bought the fish and paid for them, and were preparing to pack them in drums for shipment to Boston, when, on October 16, 1874, they received the following telegram from the plaintiff: "Agree with captain to freight fish on board to Plymouth. Insure." To this telegram the defendants replied, by letter, that the captain refused to go to Plymouth, but that they would send the fish by another vessel, adding, "Of course, we shall add commissions $2\frac{1}{2}$ per cent., as we do not get the packing." In reply, by letter, dated October 17, 1874, the plaintiff wrote: "In relation to commission, I would say that I shall protest against paying the $2\frac{1}{2}$ per cent. I would have all things right, but must insist on no advantage being taken; as full well you know that, if you insist on this $2\frac{1}{2}$ per cent., that there will be difficulty attending, when there should be none."

The defendants then sold the fish to another person for about the same price at which they had offered them to the plaintiff. The defendants and other witnesses testified that $2\frac{1}{2}$ per cent.

was the customary commission for buying such fish, and that it was a reasonable charge for the services performed. The plaintiff testified that the custom was to charge 1 per cent.

The defendants requested the judge to rule that, on the evidence, the minds of the parties never having met, no contract existed between them, and that the plaintiff's letter of October 17, 1874, was a waiver of the contract, if any existed, and justified the defendants in selling the fish to a third person.

The judge declined so to rule, and left these questions for the jury, with instructions not objected to. The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*S. B. Allen*, for the defendants.

*C. Blodgett*, for the plaintiff.

LORD, J. No contract between the parties was ever completed, except for fish to be packed in drums and sent to Boston. The plaintiff afterwards proposed to change the contract by sending the fish directly to Plymouth, not packed in drums. To this the defendants agreed upon certain conditions, to wit, that the plaintiff would allow a commission of 2½ per cent., which was the profit which, upon the evidence, the defendants would have made upon the contract as agreed upon. The plaintiff refused to accept the condition. There was, therefore, never an agreement between the parties, by which the defendants were to send the fish to Plymouth, as declared on in the plaintiff's declaration. The change which the plaintiff proposed in the agreement was one against the defendants' interest, which they were under no obligation to make except upon agreed terms, and no such terms were agreed upon. *Exceptions sustained.*