·KEHLOR FLOUR MILLS COMPANY *vs.* LINDEN & others,
& trustees.

Suffolk.    November 19, 1917. — May 23, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract,* What constitutes, Construction, Performance and breach.  *Evidence,* Matters of common knowledge.

Where an alleged contract for the sale of goods was made, if at all, wholly by letters, telegrams and cablegrams, in which no ambiguous words or terms were employed, , and where the circumstances under which the correspondence took place are not in controversy, the question whether a contract was made is one of law for the court.

In such a case, in order that there should be a contract, the writings taken together must be so plain in their meaning and effect as not to be open to any reasonable misunderstanding.

An unwarranted mistake by one of the parties to a contract in writing as to the meaning of the contract is no excuse for a breach of the contract by him due to such unreasonable misunderstanding.

Ordinarily the annexing of a condition to the acceptance of an offer is regarded as the rejection of the original offer and the making of a new counter offer, which will become a contract only upon acceptance in accordance with its terms.

In interpreting a correspondence between a manufacturing corporation in this country through its agent in Norway and a firm of merchants in Sweden, which took place a few weeks after the outbreak of the great war, it was *said* that in general· the court will take judicial notice of the disturbance of commercial relations between neutral countries dependent upon navigation in the zone affected by that war.

In an action by a manufacturer of flour doing business in the United States and having an agent in Norway against the members of a firm of merchants in Sweden, for the breach of a contract to purchase from the plaintiff forty thousand sacks of flour alleged to have been made by a correspondence by letter, telegraph and cable which took place within a few weeks after the outbreak of the great war, it appeared that the defendants in Sweden telegraphed to the plaintiff's agent in Norway on September 10, 1914, "Offer firm against reply here within Saturday September twelfth further forty thousand sacks Rex patent same price and terms.   Shipment on call September October confirm by wire soonest possible."   The words "same price and terms" referred to a contract between the parties made a few days earlier, and there was no dispute that the price was $6.90 per two hundred and twenty pounds and that a payment of $276,000 in United States currency was to be deposited immediately by cablegram with certain bankers in New York, who were to "pay this amount to sellers against Through-Bills of Lading issued," and that the credit with the New York bankers "was not to be withdrawn and not to be cancelled."   The answer of the plaintiff's agent was not sent until September 13 and was not received by the defendants until September 14.   It was as follows: "We confirm sale addi-

tional forty thousand Rex hundred kilos cottons [to the defendants] six dollars and ninety cents free on board Boston cash New York. . . . Arrange immediately confirmed credit two hundred and seventy six thousand dollars [naming, the New York bankers]." On September 14 the defendants telegraphed to the plaintiff's agent, "Confirm we bought further 40 thousand sacks Rex per Canton and further two thousand Sovereign same price and terms as previously Sovereign shipment September Scandinavian tonnage subject to depositing equivalent amount" of Swedish kronas with a certain bank in Sweden "until dollars available confirm by wire." The plaintiff's agent replied by telegram, "We confirm having wired [the plaintiff] yesterday that for the further forty thousand Rex bought by you per steamer Canton end October from Boston at price and terms as former lot equivalent amount in kronas will be deposited with [the Swedish bank] until dollars available for same." The terms last named were confirmed by letter, telegraph and cable. The defendants failed to make the required deposit in kronas in the Swedish bank and the plaintiff brought an action for damages. *Held*, that the reply of the plaintiff's agent to the defendants' first telegram of September 10, did not make a contract because it was not sent until a day after the required time and was not received until the day after that; that the defendants' second telegram of September 14 contained the original offer with the new condition of the deposit of kronas in the bank in Sweden until dollars were available for the deposit in New York, and that the offer thus modified was accepted by the plaintiff, making·a contract, which the defendants broke when they failed to make the required deposit in the bank in Sweden.

Where one of the parties to an executory contract clearly breaks his agreement, rendering performance by the other party impracticable, the right of such other party to indemnity by an action for damages at once accrues, and he is not obliged to wait before bringing his action until the arrival of the time when, if there had been no breach, both parties would have performed their obligations fully.

CONTRACT, by a corporation engaged in the business of manufacturing and selling flour with its office at St. Louis in the State of Missouri and its mills at East St. Louis in the State of Illinois, against the members of a firm of merchants doing business at Gothenberg in Sweden, and against certain corporations and partnerships as trustees under the trustee process, to recover damages alleged to have been caused by the breach of a contract in writing, made by correspondence, to purchase certain flour from the plaintiff at an agreed price as stated in the opinion. Writ dated October 13, 1914.

In the Superior Court the case was tried before *Fessenden,* J. The evidence is described in the opinion.

At the close of the evidence, after hearing the counsel for the parties, the judge ruled that under the pleadings and the evidence the question as to whether there was a contract made between the parties must be found upon the written correspondence, letters

and telegrams in the case, and that, therefore, it was a question of law to be decided by the court, and not a question of fact to be left to the jury, and stated that, as the trial had occupied several weeks, and as it was highly desirable that all the facts in the case should be found fully, he should submit the question of damages to the jury, so as to avoid, if possible, another trial of the case.

The parties thereupon made the following stipulations:

"It is stipulated that, if the court rules that there was a contract and that it was broken by the defendants, the plaintiff would be entitled to damages represented by the difference of the cost of production and delivery of the flour in question on the wharf at Boston and the flour at the rate of $6.90 a sack of two hundred and twenty pounds, this difference being $31,400.

"If the court rules that there was a contract and that it was broken by the defendants and that the breach shall be determined as of October 9, 1914, or October 10, 1914, then that there should be added as damages the further sum of $10,175, together with the further sum of $833.84, which is one half of the plaintiff's claim for loss that it would have derived from the saving of one and one half pounds of flour per sack due to the weight of empty sacks.

"It is further stipulated that, if the court shall rule that there was a contract and that the contract was broken by the defendants but that the defendants were entitled to have the damages assessed as of November 7, 1914, or of October 31, 1914, then the defendants shall be entitled to the benefit of the evidence in the case as to the market price of wheat in the period between October 9, 1914, and the other dates above mentioned; and it is agreed in this event that the average price of the wheat during that period was $1.11. In this case it is understood that a ruling to the effect last above stated would eliminate the item of $10,175 as an item of damage against the defendants.

"Interest at the statutory rate from October 13, 1914, is to be added to the verdict, if any, for which the plaintiff is entitled to have judgment ordered."

The judge then submitted the question of damages to the jury and instructed the jury to find as follows, the same to be subject to the above stipulations, which finding they accordingly returned as their verdict upon the damages, subject to the stipulations aforesaid:

"Amount of damages, if the contract claimed by the plaintiff was made by the parties, and the defendant committed a breach thereon, October 9 or 10, 1914, to wit: $42,408.84."

Thereupon the judge ordered the jury to return a verdict for the defendants, which accordingly was done, and with the consent of both parties the judge reported the case for determination by this court upon these conditions: If the judge's last ruling was right, there should be entered a final judgment in favor of the defendants; and, if it was wrong, there should be entered a final judgment in favor of the plaintiff for the amount found by the jury as damages or a lesser amount, provided this court should so decide upon the stipulation in regard thereto; or, if the judge was in error in not submitting the case to the jury on the question of whether there was evidence of fact for their consideration, as contended by the plaintiff, then for such action as this court might direct.

For convenience in the report of this case the word "krona" is treated as an English word and its plural is printed "kronas" instead of "kronor." See Murray's New English Dictionary.

*C. E. Rushmore* (of New York) & *Lee M. Friedman*, for the defendants.

*B. S. Elliott* (of Missouri) & *W. B. Grant*, for the plaintiff.

RUGG, C. J. This is an action to recover damages for breach of an alleged contract. At the time of the transactions here in issue, the plaintiff was a corporation engaged in the manufacture and sale of flour at St. Louis in the State of Missouri. The plaintiff employed as its agents respecting trade in Sweden and Norway, Noremberg and Belsheim of Christiania in Norway, who hereafter for convenience will be referred to as the agents. The defendants were purchasers of flour in Gothenberg in Sweden. The important point to be decided is whether a contract was made between the parties for the sale by the plaintiff and the purchase by the defendants of a quantity of flour.

The material negotiations on that subject were all by letter, telegraph or cable. Being thus in writing and no ambiguous words or terms being employed, and the circumstances not being in controversy, the question whether a contract was made is one of law and not of fact. *Ellis* v. *Block,* 187 Mass. 408, 411, 412. *Goldstein* v. *D'Arcy,* 201 Mass. 312, 317. The writings taken

together must be so plain in their meaning and effect as not to be
open to reasonable misunderstanding, in order that there be a
contract. If they are thus plain, it is of no avail for either party
to say that they were not understood. *Wheaton Building &
Lumber Co.* v. *Boston,* 204 Mass. 218, 224–226.

The transactions consisted of offers made by the defendants to
purchase flour of the plaintiff and replies made by the plaintiff
or its agents to these offers. An offer made by one party must be
accepted without qualification, or, if any variation from that offer
is made by the accepting party, that variation in turn must be
unequivocally adopted by the party making the first offer, before
a contract can be made. Ordinarily the annexing of a condition
to the acceptance of an offer is regarded as the rejection of the
original offer and the making of a new counter offer. Such counter
offer must be accepted without departure from its terms or there
is no contract. *Putnam* v. *Grace,* 161 Mass. 237, 245. *Harlow* v.
*Curtis,* 121 Mass. 320. *Minneapolis & St. Louis Railway* v. *Colum-
bus Rolling Mill,* 119 U. S. 149.

The written intercourse here in issue took place within a few
weeks after the outbreak of the great war. In general, the court
will take judicial notice of the disturbance of commercial relations
thereby caused between neutral countries dependent upon naviga-
tion in the zone affected by that war. *Underhill* v. *Hernandez,*
168 U. S. 250, 253.

The first communication was a telegram of September 10, 1914,
from the defendants to the agents, in these words: "Offer firm
against reply here within Saturday September twelfth further
forty thousand sacks Rex patent same price and terms. Shipment
on call September October confirm by wire soonest possible."
The words "same price and terms" refer confessedly to a contract
in writing between the parties made a few days earlier, not other-
wise here material except for the purpose of fixing price and terms.
It is conceded that these elements, fixed thus by reference to the
earlier contract, were a price of "Dollars 6.90 (six dollars and
ninety cents) per 220 lbs." and "Payment: Dollars 276,000 (dol-
lars two hundred and seventy-six thousand) cash in American cur-
rency deposited immediately by cablegram by Messrs. Brown
Bros. & Co., New York, who cable sellers and pay this amount
to sellers against Through-Bills of Lading issued." "Credit

opened [with Brown Bros. & Co.] wont be annulled nor withdrawn:" or in other words that credit was "to be irrevocable, not to be withdrawn and not to be cancelled." Shorter expression for this kind of credit appear to have been "bank guarantee" and "confirmed credit." Receipt of this order was acknowledged to the defendants by the agents who cabled it to the plaintiff. But the reply of the plaintiff through its agents was transmitted under date of September 13 and was received by the defendants on September 14. It was in these words: "We confirm sale additional forty thousand Rex hundred kilos cottons Linden Lindstrom six dollars and ninety cents free on board Boston cash New York. . . . Arrange immediately confirmed credit two hundred and seventy-six thousand dollars Brown Bros. Company."

It is plain that if the communications had ended here there would be no contract. The time limit of the offer by the defendants to make the purchase expired on September 12 and the acceptance of that offer by the plaintiff, although unequivocal in terms, was not sent by the agents until September 13 and was not received by the defendants until September 14. This was two days after the offer of the defendants expired according to its express terms. But the communications between the parties did not end here. On September 14 the defendants wired the agents, — "Confirm we bought further 40 thousand sacks Rex per Canton and further two thousand Sovereign same price and terms as previously Sovereign shipment September Scandinavian tonnage subject to depositing equivalent amount Kronas with Skandinaviska Kreditaktiebolaget until dollars available confirm by wire." The Skandinaviska Kreditaktiebolaget was a bank in Gothenberg. Receipt of the telegram of the defendants of September 14 adding the new condition was acknowledged by the agents by telegram in these words: "We confirm having wired Kehlor Flour Mills yesterday that for the further forty thousand Rex bought by you per steamer Canton end October from Boston at price and terms as former lot equivalent amount in Kronas will be deposited with Skandinaviska Kreditaktiebolaget until dollars available for same." The same in substance was written on the same date by the agents to the defendants. On September 16 the agents sent a telegram to the defendants in these words: "Kehlors cable, 'confirm Linden forty thousand rex steamer Canton Boston end October six

ninety arrange irrevocable credit Brown Brothers have bought
wheat to fill contract and must commence shipping flour
promptly.' Order Kreditaktiebolaget instantly through Brown
Brothers cable Kehlors deposit preliminarily made of equivalent
amount kronas until dollars available which must be procured
with the utmost despatch and also that the deposit will neither
be withdrawn nor cancelled confirm by wire to us that so has
been done." The portion of this telegram enclosed in subquo-
tation marks was in English, being the quotation of a cablegram
from the plaintiff to the agents, sent in reply to their cablegram
transmitting to it the telegram of the defendants of September 14,
and the rest of the telegram was in the Swedish language. On
the same day, September 16, the agents wrote to the defendants
reciting their telegram of even date and adding, — "and we are
awaiting your immediate wire confirmation that the equivalent
for the last 40,000 sacks Rex for shipment per the S. S. Canton
end October has been preliminarily deposited with the Skandi-
naviska Kreditaktiebolaget in Swedish currency until dollars obtainable
in the course of a few days, in which respect all efforts
are made from your side, and that the Skandinaviska Kreditak-
tiebolaget wire to Kehlors today hereabout through Brown Bros.
& Co., New York, and that the deposit be neither withdrawn nor
cancelled."

In order to determine the meaning of the telegram and letter,
both under date of September 16, of the agents, including the
copy of the plaintiff's cablegram to them in reply to the defend-
ants' final offer, sent to the defendants, it is necessary to analyze
the meaning of the defendants' proposition to purchase. That
proposition in its final form depends upon three different writ-
ings: (1) the original contract to which reference is made for
"price and terms," (2) the telegram of the defendants of Septem-
ber 10, and (3) their telegram of September 14. The pertinent
parts of these already have been quoted.

There would be no doubt as to the meaning of the contract if
it depended on the first two writings alone. It is the third which
causes difficulty. That instrument contained a variation from
the earlier offer. That telegram of September 14 was not a break-
ing off of previous negotiations, but a continuance of them. Its
first three words, 'namely, "Confirm we bought," incorporate all

that had gone before (so far as not then to be modified) and is the language of an intent to express a completed transaction. But there is one new condition added, and the whole contract must be treated with that "subject" clause incorporated. In order to ascertain the complete offer of the defendants, their several communications must be put together. So far as concerns the crucial matter of payment, these terms were "Dollars 276,000 (dollars two hundred and seventy-six thousand) cash in American currency deposited immediately by cablegram by Messrs. Brown Bros. & Co., New York, who cable sellers and pay this amount to sellers against Through-Bills of Lading issued." "Credit opened wont be annulled nor withdrawn" (from the first contract and embodied by reference in the telegram of September 10 and in the telegram of September 14) "subject to depositing equivalent amount Kronas with Skandinaviska Kreditaktiebolaget until dollars available" (from the telegram of September 14.)

The meaning of this last condition in connection with the words "same price and terms as previously" preceding in the telegram of September 14, and with what had before passed between the parties, is that irrevocable credit was to be established with the New York bankers of an amount sufficient so that the price could be paid to the plaintiff against through bills of lading issued, but that in place of this being done "immediately" as required in the earlier contract, an equivalent amount of kronas, that is, an amount of kronas sufficient to establish the credit in New York, was to be deposited immediately in the bank in Sweden until such reasonable time as exchange in dollars could be procured, but in any event within such time before shipment as would fully secure the plaintiff. By no fair construction of these writings can it be said that the condition established by the words following and including the word "subject" in the telegram of September 14 expunged that part of the previous correspondence which required the establishment of irrevocable credit with Brown Brothers and Company in New York in dollars to an amount sufficient to meet the payments as and when required. All these provisions of the original contract are imported into the final offer of the defendants by the use in the telegram of September 14 of the words "same price and terms as previously." The words "and terms" in this connection would have no meaning,

if the entire statement of the provision as to payment was intended to be comprehended in the condition as to the deposit of kronas in the bank in Sweden until the defendants could purchase New York exchange in dollars. The contract price was not in kronas, but in dollars. The place of payment was not Sweden, but New York. The time of payment was when through bills of lading were issued on the steamer Canton expected to sail the last of October. The deposit was to be made immediately. These elements of the contract were not changed by the telegram of September 14. The form of expression used in the telegram of September 14 is incompatible with any other idea than that the main terms of the earlier contract and proposal are retained. The collocation of the words "same price and terms as previously . . . subject to depositing equivalent amount Kronas . . . until dollars available," denotes that the words following "subject" are subsidiary to the dominant provisions as to price and terms previously stated. Neither in form nor in substance do they indicate an elimination of the terms previously stated. The meaning cannot be attributed to them that the place, time and currency of payment are changed and all expense in respect thereto is shifted from the buyer to the seller. It cannot be thought that the defendants intended, or that the plaintiff could have understood that they intended, all these terms to be obliterated, as they would or might be, if the condition as to the deposit of the equivalent amount of kronas in the Swedish bank be given a meaning inconsistent with the idea that irrevocable credit should be established with Brown Brothers and Company in New York in time to satisfy all requirements of the contract as to payment. It is further manifest that no such meaning was intended, because the condition was also that the deposit of kronas was to continue only "until dollars available," or "obtainable" (as shown by another translation of that telegram), thus making clear that exchange was still to be at the expense of the defendants and that payment was to be made in dollars in New York.

The offer as thus made by the defendants does not appear to us to be ambiguous or open to reasonable doubt. It is certain and explicit. This being the meaning of the defendants' offer, the reply of the plaintiff to that offer must be interpreted in the light of that meaning.

Whether the plaintiff accepted this offer of the defendants according to its terms depends upon the meaning of the telegram and letter of the agents to the defendants dated September 16. That telegram and letter included a copy of the plaintiff's cablegram in reply to the defendants' offer of September 14 transmitted to it by their agents. That cablegram was in terms a confirmation of the defendants' offer for forty thousand sacks of flour to be shipped on the steamship Canton sailing from Boston at the end of October. The reference to the irrevocable credit with Brown Brothers and Company was to one of the terms of the defendants' offer. It was not in any fair sense a counter offer or the suggestion of a new condition. Irrevocable credit with Brown Brothers and Company was one of the essential terms of the original proposition made by the defendants. That had not been modified or withdrawn by their telegram of September 14. The only qualification of the original contract as to terms of payment wrought by that telegram was to modify the word "immediately" in that part which required the immediate establishment of irrevocable credit with Brown Brothers and Company by a provision to the effect that the immediate deposit might be made in kronas in the bank in Sweden in order to give the defendants more time, if they desired, in purchasing New York exchange, and thus seasonably establishing the irrevocable credit with Brown Brothers and Company. The reference to this irrevocable credit in that connection was simply to one term of the offer already made. It was nothing new or additional. This is made clear by the amplifying words used by the agents in transmitting to the defendants the cablegram of the plaintiff. They urged the defendants to direct the bank in Sweden to cable to Brown Brothers and Company that the preliminary deposit of kronas equivalent in amount to the dollars required to make the payment had been made, and to procure necessary exchange with despatch. The statement in the plaintiff's cablegram that we "have bought wheat to fill contract and must commence shipping flour promptly" was a plain intimation that it had accepted the offer of the defendants.

The acceptance of the defendants' offer contained in the telegram and letter of the agents to the defendants under date of September 16 was unequivocal. The mention of the irrevocable

credit with the New York bankers may be construed either as directing attention to one of the terms of the contract of particular importance to the plaintiff, or as an instruction to their agents to see that this term of the contract was carried out. But it is not susceptible of the construction that a new or different term was imported into the transaction.

The offer of the defendants completed by their telegram of September 14 was accepted according to its terms by the telegram and letter sent to them by the agents on September 16. If there had been mistake or misunderstanding of the meaning or effect of a written contract plain in its terms, this circumstance alone would be no reason for not enforcing the contract.

Both parties construed the contract as concluded. The plaintiff made purchases in order to supply the flour. The defendants made efforts as appears from their correspondence to procure American exchange. They engaged the necessary space for transportation of the flour on the steamship Canton. There were several letters and some telephonic communications between the agents and the defendants subsequent to September 16. But they all relate to incidental or subsidiary matters and do not modify the rights of the parties as fixed by the contract. Neither party in correspondence or otherwise, until after October 1, made any contention that the contract was not closed.

No deposit of equivalent amount of kronas was made by the defendants with Skandinaviska Kreditaktiebolaget. There was considerable correspondence and telephonic communication between the agents and the defendants about purchasing exchange on New York in order that the defendants might make deposit of the required sum there, but it came to naught because the defendants regarded the rate of exchange as too high. If this be treated as material, there was uncontradicted evidence to the effect that average exchange in normal times was 3.77 kronas for one dollar, and that that figure was known as par in times of peace; that normal exchange in September, 1914, was disturbed by reason of the great war and that exchange could have been purchased at the rate of about 3.91 kronas for each dollar in New York between September 15 and October 6.

The contract required, according to the interpretation here given to it, that the defendants should immediately deposit

kronas in the bank in Sweden to an amount equivalent to the irrevocable credit required with the New York bankers. That was not done. No irrevocable credit as set forth in the contract was established with these bankers at any time. There was a breach of the contract by the defendants in not pursuing one or the other of these two courses immediately. Under date of October 7 the plaintiff sent its first direct communication to the defendants by cablegram in these words: "Unless telegram received by us from Brown Brothers on or before October ninth that irrevocable credit (for two hundred and seventy-six thousand dollars) second forty thousand has been established and confirmed will consider you have broken contract and hold you responsible all resulting damages." No such telegram was received by the plaintiff. In the meantime the price of flour had fallen. The delay until October 9, but no longer, was waived by the plaintiff.

It was said by Chief Justice Bigelow in *Mullaly* v. *Austin,* 97 Mass. 30, 32: "The rule of law is perfectly well settled that an action may be maintained to recover damages for the breach of an executory contract, before the expiration of the time when the stipulations of the respective parties, if there had been no breach, would have been fully performed. If one party is guilty of a clear infraction of the terms of an agreement, which virtually puts an end to it, the other party is not compelled to delay his remedy therefor, because a portion of the contract still remains executory. The breach by one party, by an absolute refusal to fulfil the contract on his part, renders performance by the other party impracticable, and the right to indemnity by an action for damages at once accrues." *Bullard* v. *Eames,* 219 Mass. 49, 53. That principle is applicable to these facts. The plaintiff is entitled to have its damages assessed as of October 9. In accordance with the terms of the report the entry may be

*Judgment for the plaintiff for the amount found by the jury.*