WILLIAM LAWRENCE & others, trustees, *vs.* SAMUEL
ROSENBERG.

SAME *vs.* SAME.

Suffolk.     January 17, 1921. — March 7, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, & PIERCE, JJ.

*Contract,* What constitutes.  *Equity Jurisdiction,* Specific performance.

An offer to purchase real estate for $400,000 is to be presumed to be an offer
to purchase for that amount in cash where no other method of payment is
referred to.

A real estate broker on January 20 wrote to the owner of certain property, "I
have been able to convince a client of mine to offer $400,000, for your property."
The owner later wrote the broker "I hereby accept your offer of January 20,
to purchase for $400,000 the property, . . . payment to be made in cash,
agreement of sale to be signed on or before February 9, with a deposit of $10,000
by purchaser.  Said premises are to be conveyed on or before March 10, 1920,
by a good and sufficient Trustees' deed conveying good and clear title free from
all encumbrances, except passageway rights, party wall agreements and restric-
tions of record and [a specified] lease . . . expiring January 1, 1923, and
taxes.  It is understood that a broker's commission, according to the rules of
the Boston Real Estate Exchange, is to be paid to you in the event that this
sale is completed, but not otherwise." *Held,* that if the broker's letter could
be construed as containing an unconditional offer, the acceptance was not an
unconditional acceptance of the terms of that offer but was in the nature of
a new offer and, in order to become a contract, would have to be accepted by
the broker's customer.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court on
March 3, 1920, for the specific performance of an alleged agree-
ment to purchase real estate.  The bill in the first suit alleged an
oral agreement reduced to writing in a memorandum consisting
of letters dated respectively January 20, 27 and 29 and Feb-
ruary 6, 1920, and which read as follows:

"E. Sohier Welch, Esq., Dear Sir: — I have been able to con-
vince a client of mine to offer ($400,000), Four hundred thousand
dollars, for your property No. 100 Kingston St., N. E. corner of
Essex, and as soon and at your favorable advice, I will be pleased
to cause a substantial deposit to be made on an agreement.  This

offer is for an amount that is about 140% above assessed valuation of property, and hope it will engage your favorable attention. Yours very truly,

S. H. Wachsman."

"S. H. Wachsman, Esq., 15 Court Square. Dear Sir: — The owners of the estate cor. Kingston and Essex Sts. have considered offer of $400,000 cash for the property. As you are not known to them they feel that a substantial deposit should be put up by your client as evidence of good faith the same to be returned if the sale is not consummated. I would suggest $2,000 as a proper sum unless you care to disclose the name of your principal and the trustees consider him as a responsible person. Yours truly,

E. Sohier Welch."

"Mr. S. H. Wachsman, 15 Court Sq., Boston, Mass. Dear Sir: — I authorize you to give $2,000 of your money to Mr. E. Sohier Welch, trustee, in accordance with his written request of January 27th, 1920, as a deposit on property at 100 Kingston Street, Cor. Essex Street. Yours truly, S. Rosenberg."

"S. H. Wachsman, Esq., 15 Court Sq., Office 58, Boston, Mass. Dear Sir: — In behalf of the Trustees under the will of Sarah E. Lawrence, I hereby accept your offer of January 20, 1920, to purchase for $400,000 the property 100 Kingston St., northeast corner of Essex St., payment to be made in cash, agreement of sale to be signed on or before February 9, 1920, with a deposit of $10,000 by purchaser. Said premises are to be conveyed on or before March 10th, 1920, by a good and sufficient Trustees' deed conveying good and clear title free from all encumbrances, except passageway rights, party wall agreements and restrictions of record, and lease to Blodgett, Ordway & Webber, expiring January 1, 1923 and taxes. It is understood that a broker's commission, according to the rules of the Boston Real Estate Exchange, is to be paid to you in the event that this sale is completed, but not otherwise. Very truly yours, E. Sohier Welch."

The bill in the second suit alleged an agreement in writing consisting of the letters above set forth. The defendant demurred to the bill in each suit, assigning the following causes of demurrer:

"1. That the plaintiffs have not stated in their bill of complaint

such a cause as entitles them to any relief in equity against the defendant.

"2. That it appears from a consideration of the bill that the allegations therein and the facts therein set forth do not show that any contract was ever made by and between the plaintiffs and the defendant.

"3. That the allegations in the bill and the facts therein set forth show that the suit is based upon a contract for the sale of land, and that there is no memorandum or note thereof in writing and signed by the defendant or by any person thereunto by him duly authorized, according to the provisions of R. L. c. 74."

The suits were heard upon the bills and the demurrers by *Jenney*, J., who made an interlocutory order in each case that the demurrer be sustained with the right to amend the bill within ten days, and later by his order, the bills not having been so amended, a final decree was entered in each case dismissing the bill with costs. The plaintiffs appealed.

*L. A. Ford*, (*L. Saltonstall* with him,) for the plaintiffs.

*Lee M. Friedman*, (*P. D. Turner* with him,) for the defendant.

CROSBY, J. These are suits in equity brought for specific performance of an alleged contract to purchase a parcel of land with buildings thereon at 100 Kinsgton Street in Boston. The bill in the first suit sets forth an oral contract, evidenced by a memorandum in writing consisting of four letters. In the second suit the bill alleges that a written contract was made between the parties and is embodied in the letters above referred to. Demurrers filed by the defendant in each case were sustained, and a final decree was entered dismissing the bill with costs, from which the plaintiffs appealed.

The right of the plaintiffs to specific performance in either suit cannot be decreed unless an enforceable contract is shown by the letters, which are set out above. The letter from the defendant's broker, Wachsman, to Welch, dated January 20, 1920, does not purport to be an absolute and unconditional offer; the statement therein by the writer that he "will be pleased to cause a substantial deposit to be made on an agreement," plainly indicates that further negotiations were contemplated. The letter written by Welch in reply dated January 27, suggests that a deposit of $2,000 be made, and that it is to be returned if the sale

is not consummated. The letter of January 29, from the defendant to his broker, Wachsman, authorized the latter to give $2,000 of his own money to Mr. Welch as trustee, as a deposit in accordance with the request contained in his letter of January 27. The last letter, dated February 6, 1920, from Welch to Wachsman, is claimed by the plaintiffs as an acceptance of an offer made in the first letter dated January 20.

If we assume that there is a sufficient memorandum to satisfy the statute of frauds, the question remains whether a mutual agreement for a sale and purchase was entered into by the parties by the correspondence which was concluded by the letter of February 6. In determining that question the letters must be considered together. If the letter of January 20 be regarded as a definite offer to purchase the property for $400,000, it is to be presumed to be an offer of that amount in cash where no other method of payment is referred to. *Ryan* v. *Hall*, 13 Met. 520, 523. *Dixon* v. *Williamson*, 173 Mass. 50, 52. It is an elementary principle in the law of contracts that in order to constitute a valid agreement the acceptance must be in accordance with the terms of the offer. If the first letter can be construed as containing an unconditional offer, the acceptance was not an absolute, unqualified acceptance of that offer, but provided that an agreement of sale should be entered into with a deposit of $10,000 by the defendant, and also provided as follows: that the deed of the premises should convey a "good and clear title free from all encumbrances, except passageway rights, party wall agreements and restrictions of record, and lease to Blodgett, Ordway & Webber, expiring January 1, 1923 and taxes. It is understood that a broker's commission, according to the rules of the Boston Real Estate Exchange, is to be paid to you [the defendant's broker] in the event that this sale is completed, but not otherwise." It is plain that the acceptance by the plaintiffs was not an unconditional acceptance of the terms of the offer; it was rather in the nature of a new offer, or counter proposal, and in order to become a contract would have to be accepted by the defendant. *Metropolitan Coal Co.* v. *Boutell Transportation & Towing Co.* 185 Mass. 391. An acceptance which stipulates that the premises are to be sold subject to passageway rights, party wall agreements and restrictions of record, an outstanding lease and unpaid taxes, falls far short of

an unqualified acceptance of the offer. In these circumstances it is clear from the correspondence that the minds of the parties never met respecting the purchase and sale of the estate. *Gowing* v. *Knowles,* 118 Mass. 232. *Harlow* v. *Curtis,* 121 Mass. 320. *Stoddard* v. *Ham,* 129 Mass. 383. *Putnam* v. *Grace,* 161 Mass. 237, 245. *Williams* v. *Smith,* 161 Mass. 248. *Metropolitan Coal Co.* v. *Boutell Transportation & Towing Co. supra. Wheaton Building & Lumber Co.* v. *Boston,* 204 Mass. 218. *Bradley* v. *Haven,* 208 Mass. 300, 302. *Stroock Plush Co.* v. *New England Cotton Yarn Co.* 213 Mass. 354, 359.

It follows that on the face of the bill no agreement binding the defendant was entered into. In view of the conclusion reached it is unnecessary to consider the other grounds of demurrer relied on by the defendant. The entry in each case must be

*Decree affirmed with costs.*