### SWANSON v. McCALL.

No. 19140.   Opinion Filed Sept 10, 1929.

Robt. S. Kerr and L. H. Harrell, for plaintiff in error.

Wimbish & Wimbish, for defendant in error.

JEFFREY, C.  Victor Swanson, as plaintiff, commenced this suit against William A. McCall, defendant, to compel specific performance of an alleged contract to sell an undivided one-fourth interest in the oil and gas royalties in certain lands located in Pontotoc county.  The defendant lived in San Jose, Cal., but owned one-half of the oil and gas royalties in approximately 73 acres of land located near Allen in Pontotoc county, Okla.  The negotiations for the purchase and sale of the royalties were had by means of telegrams between plaintiff in Ada, Okla., and defendant at San Jose, Cal.  On June 22, 1927, plaintiff wired defendant that he had been informed that defendant desired to sell one-half of defendant's royalties in the land, and inquired what defendant wanted for such interest.  On June 23rd, defendant wired plaintiff: "Send me price for one-half of my royalty."  On June 28th, plaintiff sent defendant the following telegram:

"Offer two thousand cash for half of your royalty at Allen, or give you one thousand cash and fifteen hundred in oil from half my royalty when producing Homa Okla offset missed sand in offset to their producer so don't look so good."

On July 3rd, defendant replied by telegram as follows:  "Will take $2,000 send money and papers to Bank of Italy notify me when paper starts."  On July 7th, plaintiff wired defendant as follows: "Just returned after 4th received your wire sending papers where is abstract."  On July 9, the First National Bank at Ada, Okla., at the request of plaintiff, forwarded to the Bank of Italy at San Jose, Cal., a mineral deed to be executed by defendant and his wife together with the following draft attached.

"Customer's Draft.  Subject to approval of title royalty deed 1/4 73.10 A. Sec. 17-T5N-R8E, attached, 5 days to Ex. Title.

"Pay to the order of Wm. A. McCall $2,000.00 "Two Thousand and No/000 _____Dollars. "Value Received, and Charge to Account of "Victor Swanson.

"To Victor Swanson, First National Bank, Ada, Oklahoma."

The draft was rejected by defendant and returned to the First National Bank at Ada by the Bank of Italy at defendant's request.

The issue in the trial court was, Did the correspondence amount to an executory contract such as would entitle plaintiff to a

decree of specific performance? The trial court found in favor of defendant and denied the relief asked. From this judgment, plaintiff has appealed.

Three separate propositions are argued by counsel for plaintiff, but it is conceded that if the telegram of date July 3rd, wherein defendant stated, "Will take $2,000 send money and papers to Bank of Italy, notify me when paper starts," is not an unconditional acceptance of plaintiff's former offer, the judgment of the trial court is correct. In view of the conclusions reached on this question, it will not be necessary to discuss the other propositions contained in plaintiff's brief. Acceptance, as used to denote a material element of a contract, comprehends the assent of the person to whom the offer is made to the whole proposition contained in the offer. The acceptance must be co-extensive with the offer in all its provisions, and not qualified, nor may it depart from provisions of the offer by the insertion of any new matter. Unless the acceptance is unconditional and unqualified, it amounts to a rejection of the offer and requires an assent or an acceptance on the part of the party making the offer in order to close the bargain and make a binding contract.

By the telegram of date June 28th, plaintiff offered to pay $2,000 cash, or $1,000 in cash, and $1,500 in oil, when oil was produced from the property. Defendant accepted the offer of $2,000 cash, and if he had closed with this acceptance, there would have been a binding contract of sale. However, this telegram contained a provision that the money and papers should be sent to the Bank of Italy. This provision relates to a very vital part of the transaction, and since defendant attached sufficient importance to the collection of the purchase price at the time he was to execute and deliver the mineral deed to put the provision in the telegram, the court should take care not to minimize its importance in attempting to ascertain the meaning of the telegram. The provision appears to be a condition attached to the acceptance. At least, we are unable to say as a matter of law that it is not such. The evidence discloses that defendant did not know plaintiff; and that plaintiff was in Ada, Okla., and defendant in San Jose, Cal. Under these circumstances, it would ordinarily be quite advantageous to defendant to have the money in his bank ready for delivery when he executed the mineral deed instead of having to go to Ada, Okla., for its collection, or to have paper paid at that point. Defendant refused to execute the deed because plaintiff did not have the money in the bank to be paid upon execution and delivery of the deed. It would seem that defendant was attempting to avoid a remittance in the form attempted by plaintiff. Plaintiff had a reasonable time within which to accept the condition attached to defendant's acceptance, but it appears that plaintiff never accepted the new terms, and defendant sold the property to another. What constitutes a reasonable time depends upon the facts and circumstances in each case. When contracting with reference to a subject-matter which is likely to undergo sudden, frequent and great fluctuations of value, such as mineral property, a reasonable time within which to accept an offer or a counter offer is a less time than that required for accepting an offer to sell property more stable in value. Under the proof, it required approximately a week for mail to go from Ada, Okla., to San Jose, Cal. Defendant did not agree to extend plaintiff credit on the sale of his mineral, and did not agree to accept a five-day sight draft. Neither did plaintiff agree to have the money in the Bank of Italy to be delivered upon the execution of the deed, nor attempt to do so. Consequently, the minds of the parties never met on a material part of the contract, and it was never consummated in such a way as to become a binding and enforceable contract.

In the case of Sharp v. West, 150 Fed. 458, West, who lived in St. Louis, wrote Sharp at Fayetteville, Ark., offering to sell certain inherited interest in real estate at $300 per share. Sharp replied as follows:

"Received your letter a day or so since, and have concluded to take your five shares in the old home place myself, as per your offer of $300 per share, and will deposit the $1,500 in any bank you wish in Fayetteville, you to mail deed to bank and have them hand me deed and pay you $1,500."

The court held that Sharp's acceptance was a modification of West's offer and did not constitute a binding contract.

In De Jonge v. Hunt (Mich.) 61 N. W. 341, Hunt, who lived in Sioux City, Iowa, wrote De Jonge, who lived in Grand Rapids, Mich., that he would sell certain real estate for $500 cash net. De Jonge accepted the offer by letter inclosing a deed. By the letter of acceptance, De Jonge requested that the deed be executed and returned to the Michigan Trust Company where the purchase price would be paid. The letter of acceptance stated that if it was not satisfactory to conclude the transaction in that manner, Hunt could do different. It was held that in order to complete the contract, it was necessary for Hunt to write another letter assenting to the new terms contained in the letter of acceptance. In the case of Babcock Bros. Lumber Co. v. Ga. F. & A. Ry.

 

Co., 127 Ga. 329, the railway company wrote the lumber company offering to sell five miles of steel rails at $26 per ton. The lumber company replied in the following language:

"We have your esteemed favor of April 8, in regard to the 45-pound steel relayers, and accept your offer. Please consider the deal closed. In billing these make two miles cash, and three miles to be paid for by note due a year from now, that is, April 1, 1905. Kindly deliver our first two miles at your earliest convenience, and the next three miles at your very latest convenience. * * *"

Upon this state of facts, it was held that the acceptance was not unconditional, but it embraced new terms not referred to in the offer, which were not accepted by the railway company. Counsel for plaintiff cites several cases holding that a mere suggestion or request contained in an acceptance of an offer is not such a condition as to vary the terms of the offer. The principle of law is universally accepted. But whether certain words or expression attached to an acceptance constitute a condition or a mere suggestion or request depends upon the intention of the party making them. The question in each case depends upon all the facts and circumstances of the case. Other than the rules of construction and interpretation of written contracts, there is no fixed rule for determining the question. The conclusion reached in some of the cases is based upon the fact that the provisions coupled with the acceptance relate to the performance of the contract rather than the making of it. But if application of these authorities be made to the case at bar, we would be compelled to say, in effect, that it was immaterial whether defendant received a cash consideration for his oil royalty at the time and place of the execution and delivery of the deed, while, as a matter of fact, it appears reasonably clear that it was an important element entering into the making of the contract.

It is contended that time was not made of the essence of the contract, and that defendant must tender a mineral deed and demand performance before he can rescind the contract. However, this argument presupposes a valid contract which never in fact existed.

The judgment of the trial court is affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.