## HOME GAS CO. v. MAGNOLIA PETROLEUM CO.

No. 19354.    Opinion Filed May 6, 1930.

S. J. Berton and Andrew W. Little, for plaintiff in error.

Blakeney, Ambrister & Wallace, for defendant in error.

REID, C. The plaintiff got a judgment against the defendant in the sum of $2,000 alleged to have been due as a promised contribution by defendant of what is known to the business as "dry hole money" in drilling a well for oil and gas by the plaintiff.

The defendant appealed, and the errors assigned will be discussed after we have stated the material evidence.

The plaintiff based its action upon a contract alleged to have been made by correspondence between the parties, and more particularly a letter written May 20, 1922, from defendant to plaintiff.

In order to more fully understand the matter, it will be first stated that the plaintiff held a lease on the S. ½ of the N. W. ¼, section 21, 18 N., 5 E., in Payne county, Okla., which land was owned in fee by L. D. Gaunt, who was president and general manager of the defendant company, and defendant held leases on the N.½ of the N.W.¼ of section 21, and the N.E.¼ of section 20 adjoining, at the time the correspondence was had by Gaunt for the defendant, and by one Louis Campbell, acting for plaintiff.

On May 19, 1922, Campbell, at Oklahoma City, wrote Gaunt at Cushing, Okla., as follows:

"We have just about made up our minds to drill a well on your land, described as the S.½ N.W.¼, sec. 21-18N.-5E., and had it in mind to make the location in the northwest corner.

"As you know this lease expires on November of this year, and I was wondering if you would give us an extension for sufficient time after the expiration of this lease to complete the well provided it was not completed by November 17, 1922.

"If you will make this extension, we would start the well within 60 days from this date.

"Incidentally, I might suggest that this location would be an offset to the Home Gas Company, and a letter covering the $2,000 donation would be in line."

On May 20th, the following reply was sent, directed to plaintiff, by defendant company, and signed by Gaunt, as president, to wit:

"Attention Mr. Louis Campbell.

"Confirming our conversation with you, and referring to your letter to our Mr. Gaunt, we will contribute two thousand dollars ($2,000.) toward the drilling of a well, provided it would prove to be a dry hole on the northwest corner location of the south half (S.½) of the northwest quarter (N.W.¼) of sec. 21, T.18 N., R. 5 E., I. M., and to be drilled to second break in the lime at an approximate depth of 3,700 feet.

"Well to be commenced in 60 days and completed within one year."

On May 24, 1922, Campbell replied to defendant as follows:

"I received your letter about making a donation to us if we drill a well in Sec. 21-18-5E., and note that you state you will give us $2,000. if we drill it to 3,700 feet, if it is a nonproducer at that depth.

"In my conversation with Mr. Gaunt, he

stated that he would make the same kind of donation and under the same terms as the donation we made towards the well you drilled in sec. 9-18-5E. I have looked up the letter we wrote you and find that we gave you $2,000 for a 3,500 foot hole. I feel sure that you will want to change your letter to this depth."

There was no reply by the defendant to this letter.

In June following this correspondence the plaintiff began drilling a well in the northwest corner location of its lease, drilled to 3,970 feet. It was a dry hole, and was plugged in October, 1922. Every condition imposed by defendant's letter of May 22nd was met by plaintiff.

The defendant contends that, as the suit was not begun until January 20, 1927, it was barred by our three-year statute of limitation. Section 185, subd. 2, C. O. S. 1921. We are unable to see this question in the case. If there was any contract between these parties, it was made by the written correspondence. There was no promise to pay by the defendant, unless the letter of May 20, 1922, on which plaintiff declared, can be construed as such. Therefore, the applicable statute of limitations is the one relating to written agreements.

The defendant claims there was no contract of any kind by which it was bound to pay the $2,000 for the reason that the reply of plaintiff on May 24th, was not an unconditional acceptance of the offer made by defendant's letter of May 22nd. Section 5009, C. O. S. 1921.

In the case of Foster v. West Publishing Co., 77 Okla. 114, 186 Pac. 1083, this court stated the rule applicable to this case in the syllabus as follows:

"If an offer is accepted as made, the acceptance is not conditional and does not vary from the offer because of a suggestion that the terms are unfair, or the expression of a hope, or suggestion, that the offerer will modify the terms."

The opinion in the foregoing case reviews the decision of this and other courts and text-writers on the question, all to the effect, as applied to the particular facts of this case, that the acceptance does not become conditional simply by the fact that the acceptor suggests, in his reply, that the offerer will modify his offer in a certain particular, upon reflection.

The Massachusetts case of Nelson v. Hamlin, 155 N. E. 18, is peculiarly in point. In that case the plaintiff sued defendant for breach of contract of employment claimed to have been made by letter, and recovered. The court in the opinion said:

"The finding that the letters of April 19th and April 21st, 1920, constituted a valid contract in writing was warranted. The acceptance was in accordance with the terms of the offer. Lawrence v. Rosenberg, 238 Mass. 138, 141, 130 N. E. 189. The statement in the plaintiff's letter, 'it being understood that you wish me to stay in my present position with the Phillips Company pending the working out of your present dealings or until conditions make it necessary to place me elsewhere,' does not render the acceptance qualified or conditional. By the use of the words 'you wish,' the judge could have found that the plaintiff did not intend them to be a condition of the acceptance, and that the defendant did not so construe them.

" 'Frequently, an offeree, while making a positive acceptance of the offer, adds as a request or suggestion that some addition or modification be made. So long as it is clear that the meaning of the acceptance is positively and unequivocally to accept the offer, whether such request is granted or not, a contract is formed.' Williston on Contracts, vol. 1, sec. 79; Culton v. Gilchrist, 92 Iowa, 718, 721, 61 N. W. 384; Phillips v. Moor, 71 Me. 78; Turner v. McCormick, 56 W. Va. 161, 49 S. E. 28, 67 L. R. A. 853, 107 Am. St. Rep. 904; Purrington v. Grimm, 83 Vt. 466, 469, 76 Atl. 158; Robinson v. Western Union Telegraph Co., 169 Mich. 503, 514, 135 N. W. 292; Simpson v. Hughes, 66 L. J. Ch. (N. S.) 143; s. c. 66 L. J. Ch. (N. S.) 334; Stevenson, Jaques & Co. v. McLean, 5 Q. B. D. 346, 350. It follows that the defendant's first, second, and third requests were rightly denied."

See 13 C. J. 283, sec. 86, and authorities cited.

Plaintiff's letter of May 24, 1922, must be regarded as an acceptance of defendant's offer. It sought to impose no new condition, but simply expressed the belief that defendant would change its condition to a well of lesser depth when its attention was called to their previous contract under which defendant had drilled the well under similar circumstances.

We have found that the contract was made as claimed by plaintiff, and that plaintiff complied with the obligations imposed therein. The well was drilled 3,970 feet, at the place requested by the defendant and within the time, and defendant got the benefit of the test as to its adjoining lease.

The fact that plaintiff, even if required to do so by the custom of the business, failed to notify defendant and give it an opportunity to measure the well before it was

114

plugged and abandoned, becomes immaterial by reason of defendant's own evidence that it was relying on its claim that no contract had been made, and would not have measured the well if it had been given the opportunity.

After also examining the other questions raised by defendant, we have concluded that the judgment of the trial court should be affirmed, and it is so ordered.

Proper application having been made for judgment on the supersedeas bond, it is found that upon this affirmance, the judgment should be awarded as requested.

It is therefore ordered and adjudged that the plaintiff, Magnolia Petroleum Company, a corporation, do have and recover from United States Fidelity & Guaranty Company, a corporation, surety on the supersedeas bond herein, the sum of $2,000, with interest thereon at 6 per cent from August 9, 1926, for all costs, and for all of which let execution issue.

TEEHEE, FOSTER, LEACH, and EAGLE-TON, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1, 2) 6 R. C. L. p. 611; R. C. L. Perm. Supp. p. 1773, et seq: See "Contracts," 13 C. J. §86, p. 283, n. 39. "Limitations of Actions," 37 C. J. §86, p. 757, n. 48.