OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



December 8, 1999

The Honorable Senfronia Thompson
Chair, Committee on Judicial Affairs
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0153

Re: Effect of certain protest words written beneath a person's signature on a state document (RQ-0090-JC)

Dear Representative Thompson:

You ask about the effect of certain protest words written beneath a person's signature on a state document. Your letter indicates that you are inquiring on behalf of a constituent, whose interest in this issue arises from his attempts to submit an "Offer in Compromise" form to the United States Internal Revenue Service with words such as "forced to sign under threat, duress and coercion" and "non assumpsit to the contents of this document" written alongside his signature. Letter from Honorable Senfronia Thompson, Chair, Comm. on Judicial Affairs, Texas House of Representatives, to Honorable John Cornyn, Attorney General (July 21, 1999) (on file with Opinion Committee). He asks about the effect of such words written on a state document, although he does not ask about any particular state document. Thus, we consider generally whether a binding agreement with the state is created if a person writes beneath his signature on a document the words "forced to sign under threat, duress and coercion" or "non assumpsit to the contents of this document."

In this opinion, we set out the general principles that would apply to a situation such as the one you describe. Other rules might apply to a particular situation, and whether or not an agreement is made might depend upon the particular facts of the situation. Thus, we do not determine whether these words written on a document will create an enforceable agreement in every single case.

In order to form a binding agreement, there must be a "meeting of the minds" of the parties to the agreement. In other words, all of the parties to the contract must agree on all of the same things; there must be mutual assent. See Solis v. Evins, 951 S.W.2d 44, 49 (Tex. App.–Corpus Christi 1997, no writ). "There can be no agreement when one party has the intention to make it, but the other has not." Id. As a general rule, if there is not a meeting of the minds on all of the material terms of the contract, there is no contract.

The meeting of the minds necessary to form a contract springs from an "offer" and an "acceptance." A contract is not formed until there has been an offer of contract terms from one

party, and an acceptance of those terms by the other party. *See Smith v. Renz*, 840 S.W.2d 702, 704 (Tex. App.–Corpus Christi 1992, writ denied).

An offer must be certain and unambiguous. *See Morrow v. De Vitt*, 160 S.W.2d 977, 983 (Tex. Civ. App.–Amarillo 1942, writ ref'd w.o.m.). Certainty is required so that the person receiving the offer can know exactly what he is being asked to agree to. *See id.* If a person writes something such as "forced to sign under duress" or "non assumpsit to the contents of this document" beneath his signature on a document that is supposed to be an offer, the offeror appears to be saying that he does not agree to the terms of his own offer. In such a case, it could be said that the offer is uncertain and ambiguous, and cannot form the basis of an agreement. Thus, these words written beneath a signature on a document may make the document invalid as an offer.

In the event a valid offer is made by one party, it must be accepted by the other party in order for an agreement to be formed. An acceptance must not change or qualify the material terms of the offer. If it does, the offer is considered to have been rejected and a counteroffer made, and there is no enforceable agreement unless the counteroffer is accepted. *See United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968).

The person to whom an offer is made must communicate his acceptance of the offer. Often, when an agreement is offered in writing, a person's signature on the agreement is required to communicate that person's acceptance of the terms of the agreement. *See Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 410 (5th Cir. 1996). If a person writes something such as "forced to sign under duress" or "non assumpsit to the contents of this document" beneath his signature on a document offered to him, it could be argued that the person qualified the terms of the offer and thus indicated that he did not accept it. In such a case, there is no meeting of the minds on all of the terms of the agreement, and thus there is no agreement.

For example, in a federal case from Kansas, a college professor was offered a renewal of his employment contract with a reassignment of duties. *See Hullman v. Board of Trustees of Pratt Community College*, 725 F. Supp. 1536 (D. Kan. 1989), *aff'd*, 950 F.2d 665 (10th Cir. 1991). One of the terms of the offer was that the professor contest any employment issues by following established grievance procedures. *Id.* at 1543. The professor signed the contract, but attached to it a memorandum stating that "I have signed this contract under protest" and that his signature "should not be construed as a waiver of any rights I might have to retain the former position or to contest the reassignment." *Id.* The court held that the protest words, coupled with the professor's expressed intention to contest the reassignment by any means, instead of by the established grievance procedure, materially altered the terms of the college's offer. *Id.* 1551-52. The professor had rejected the offer and there was no agreement. *Id.* Thus, in some cases, certain words written on a document beneath a signature can make the signature void as an acceptance.

In other cases, however, it can be argued that where acceptance of an offer is indicated by a signature, words such as "forced to sign under duress" or "non assumpsit to the contents of this document" written beneath the signature are merely words of protest that do not qualify or alter the

terms of the offer. This type of "grumbling acceptance," as it is called, has been found by courts to be sufficient to form a contract. "An expression of acceptance is not prevented from being exact and unconditional by the fact that it is 'grumbling,' . . . ; but it must appear that the 'grumble' does not go so far as to make it doubtful that the expression is really one of assent . . . ." ARTHUR L. CORBIN, 1 CORBIN ON CONTRACTS § 3.30, at 472-75 (rev. ed. 1993).

For example, in a case from Oklahoma, a college professor was offered an employment contract that could be accepted by affixing his signature beneath the words "I accept the responsibilities of the appointment under the terms outlined above." *Price v. Oklahoma College of Osteopathic Med. & Surgery*, 733 P.2d 1357, 1362 (Okla. Ct. App. 1986). The professor signed the offer, but wrote beneath his signature that he was doing so "under protest" because he objected to the salary. *Id.* at 1358. The court held that the professor's signature on the contract was a clear acceptance of the offer, even with the added protest words. *Id.* at 1361-62. "The notation amounted to no more than saying I don't like your offer, I don't think it's right or fair, but I accept it." *Id.* at 1362. Under these circumstances, the court found that the offer was accepted and a binding contract was formed.

A person's conduct might also indicate acceptance of an offer, even if the person's written words suggest otherwise. Acceptance of an offer may be shown by performance and acceptance of benefits by the person to whom the offer was made. *See United Concrete Pipe Corp.*, 430 S.W.2d at 364; *McCarty v. Langdeau*, 337 S.W.2d 407, 412 (Tex. Civ. App.–Austin 1960, writ ref'd n.r.e.). For example, in a Massachusetts case, a borrower sought an extension of a loan commitment from the state housing finance agency. *See Massachusetts Hous. Fin. Agency v. Whitney Hous. Assocs.*, 638 N.E.2d 1378, 1380-82 (Mass. App. Ct. 1994, review denied). The borrower signed the agreement for the extension but, because he objected to one of the lender's conditions, attached a letter saying that his acceptance of the extension was "signed by me under protest." *Id.* at 1380. When the lender sought to enforce the agreement, the borrower argued that his protest words constituted a rejection of the condition. *Id.* at 1380-81. Because the borrower had accepted the benefits of the agreement, the court held that he could not then disavow the condition:

> The "accepted with prejudice," communicated no more, i.e., that Whitney did not like the arbitrage condition, expected to talk more about it, but, grudgingly accepted it in preference to having the MHFA commitment expire. For its part, Whitney accepted the benefit of the extension documents, namely, the extension of the permanent loan commitment, without which the project would have been in dire jeopardy. . . . . It lies ill in Whitney's mouth, after obtaining what it needed, to disavow the arbitrage condition.

*Id.* at 1382.

As these cases illustrate, whether certain words written beneath a signature in response to an offer is an acceptance or a rejection of the offer depends upon the factual circumstances surrounding

the proposed agreement.  In some cases the words may stand in the way of an agreement; in other cases they may not.  Consequently, we are unable to say what the effect of the words "forced to sign under threat, duress, and coercion" or "non assumpsit to the contents of this document" will be in every case.  As a general rule, however, these words may indicate that the person signing has not agreed to the terms of the document, and consequently that there has been no "meeting of the minds" that is necessary to form a binding agreement.

## S U M M A R Y

The words "forced to sign under threat, duress and coercion" or "non assumpsit to the contents of this document" written under a person's signature on a state document may indicate that the person signing has not agreed to the terms of the document, and consequently that there has been no "meeting of the minds" that is necessary to form a binding agreement.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Barbara Griffin
Assistant Attorney General - Opinion Committee