OPINION
Plaintiff-appellant, Elmer Ohmer, appeals the decision of the Butler County Court of Common Pleas granting summary judgment to the Ford Motor Company ("Ford"). We affirm the decision of the trial court.
Appellant purchased a 1993 model Ford F-350 pick-up from Mel Farr Ford, Inc. ("Mel Farr") on December 1, 1993. Subsequent to the purchase, appellant complained to Mel Farr about various alleged mechanical problems with the truck. Appellant attempted to have the truck repaired by Mel Farr on numerous occasions, but he was not satisfied with the results. Appellant was not required to pay for any of the repairs.
Approximately one year after purchasing the vehicle, appellant retained legal counsel and contacted a Ford representative to discuss his dissatisfaction with the truck. Appellant alleged that his truck was a "lemon." Ford did not agree with appellant's characterization. Yet, Ford offered to replace appellant's truck with a brand new 1996 model F-350 truck in an effort to maintain appellant as a "loyal and satisfied Ford customer." The new truck was to operate as full settlement for any claims appellant might have asserted against Ford.
As part of the settlement, appellant received a replacement agreement to sign. The terms of the replacement agreement required appellant to pay any difference in the manufacturer's suggested retail price ("MSRP") between appellant's current truck and the new 1996 truck. Appellant signed the replacement agreement and returned it to Ford. Ford agreed to pay the costs of transferring to the new truck the accessories installed on appellant's 1993 truck.
Mel Farr obtained a replacement truck for appellant approximately two months after he signed the replacement agreement. Mel Farr contacted appellant and requested that he bring his truck to the dealership to exchange it for the new one. When appellant arrived, Mel Farr removed the accessories from appellant's truck and installed them on the new truck. On the day of the exchange, the 1993 truck was over two years old and had been driven approximately thirty thousand miles. Mel Farr asked appellant to pay the MSRP difference of $2,200 between the two trucks and to sign a release. Appellant objected. Mel Farr informed appellant that he could not take the new truck unless he paid the MSRP difference and signed the release. Appellant signed the release "under protest," paid Mel Farr $2,200 in cash and took possession of the new truck.
Approximately twenty months after appellant drove the new 1996 F-350 truck away from the dealership, appellant filed a complaint against both Mel Farr and Ford. The complaint averred that Mel Farr and Ford were liable to appellant under Ohio's "lemon law" statutes for problems associated with the 1993 Ford F-350 truck. The trial court granted summary judgment to Mel Farr. Ford deposed appellant regarding his claim and then sought summary judgment. The trial court granted summary judgment to Ford for two reasons. First, the trial court found that the release signed by appellant was an absolute bar to any claim regarding the 1993 truck. Second, the trial court noted that appellant was barred from attacking the validity of the release because he failed to return the 1996 truck to Ford. Appellant drove the 1996 F-350 truck without complaint and even used it as a trade-in on a new Ford truck in 1999. Appellant now appeals the trial court's decision granting summary judgment to Ford and raises one assignment of error for review.
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF/APPELLANT ELMER OHMER IN FINDING THAT HE WAS BARRED FROM BRINGING A CLAIM UNDER THE LEMON LAW ACT BECAUSE OF HIS EXECUTION OF A RELEASE.
 In his assignment of error, appellant argues that the trial court improperly granted summary judgment to Ford. Appellant claims that the release he signed does not bar him from bringing an action against Ford for damages because the release is invalid. Appellant maintains the release is invalid because he signed it "under protest" and it is not supported by valid consideration.
It is appropriate for a trial court to grant summary judgment pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. A party seeking summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claims. Desher v. Burt (1996), 75 Ohio St.3d 280,293. If the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Id.; Civ.R. 56(E). An appellate court reviews a trial court's decision to grant summary judgment denovo. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440.
A release is a contract, subject to the requirements for a valid contract. Okocha v. Fehrenbacher (1995), 101 Ohio App.3d 309, 318;Mathis v. St. Alexis Hosp. (1994), 99 Ohio App.3d 159, 163. A valid contract requires a bargain in which there is a manifestation that the parties assent to the exchange and a consideration. E.g., McSweeney v.Jackson (1996), 117 Ohio App.3d 623, 631; Restatement of the Law 2d, Contracts (1981), Section 17. Mutual assent is normally manifested by an offer by one party followed by an acceptance by the other party.McSweeney at 631; Restatement of the Law 2d, Contracts (1981), Section 22.
Consideration is a bargained for exchange of a promise for a return promise or a promise for a performance. See Carlisle v.
T R Excavating, Inc. (1997), 123 Ohio App.3d 277, 283; Restatement of the Law 2d, Contracts (1981), Section 71. Consideration is "bargained for" if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. Carlisle at 283. Generally, consideration consists of either a benefit to the promisor or a detriment to the promisee. Id. A benefit may consist of some right, interest or profit accruing the promisor, while a detriment to the promisee may consist of some forbearance, loss, or the creation, destruction or modification of a legal relation. Brads v. First BaptistChurch (1993), 89 Ohio App.3d 328, 336. The benefit or detriment does not need to be great; it need only be something regarded by the promisor as beneficial enough to induce his promise. Carlisle at 283.
Appellant first argues that the release he signed is invalid because Ford provided no consideration for the release. Appellant maintains that the brand new 1996 truck was not valid consideration because Ford was already obligated to replace the 1993 truck since it was a lemon. Yet, appellant is seeking in this action to prove that the 1993 truck was a lemon to collect damages from Ford. We disagree with the dizzying circularity of appellant's reasoning.
Prior to signing the replacement agreement and the release, appellant only alleged that his truck was a lemon. Appellant did not file a complaint against Ford, nor did appellant prove that the truck was a lemon. Ford never agreed that the truck was a lemon. Therefore, it is quite obvious Ford did not have a pre-existing legal duty to provide appellant with a replacement truck. Rather, appellant, with the assistance of legal counsel, bargained for a settlement with Ford. Ford offered to replace appellant's three- year-old truck with which he was dissatisfied. In exchange for the new truck, Ford asked appellant to pay any MSRP difference between the two trucks and sought his promise to relinquish any legal claims he might have with regard to the 1993 truck. There was more than sufficient consideration to support the release.
Appellant next argues that the release is an invalid contract because he did not assent to its terms. Appellant maintains that his lack of assent to the release is apparent because he signed the release "under protest."
Whether appellant assented to the terms of the release depends upon the legal significance, if any, of appellant's signature "under protest." Generally, to accept an offer, the offeree must manifest an "intention to consent to the terms of the offer." 1 Perillo, Corbin on Contracts (Ed.Rev. 1993), 456, Section 3.28. A reply to an offer that purports to accept but is conditional on the offeror's assent to additional or different terms is not an acceptance, but a counteroffer. Foster v. OhioState Univ. (1987), 41 Ohio App.3d 86, 88. A reply to an offer that purports to accept the offer "with prejudice" or "under protest," or which adds a comment, a purported clarification, or an expression of dissatisfaction, is nonetheless a valid acceptance. 1 Perillo, Corbin on Contracts (Ed.Rev. 1993), 472-74, Section 3.30; see, also, MassachusettsHousing Finance Agency v. Whitney House Assoc. (1994),37 Mass. App. Ct. 238, 241. Such acceptances are in the category of "grumbling acceptances," acceptances made without enthusiasm but acceptances nonetheless. Id.
There are no Ohio cases that directly address grumbling acceptances. However, cases from other states illustrate this fundamental contract principle. In Whitney House, the Massachusetts Housing Finance Agency ("MHFA") issued a loan commitment to Whitney House Associates ("Whitney") to be disbursed when Whitney substantially completed construction of a housing project. Whitney House Assoc., 37 Mass. App. Ct. at 239. Whitney experienced a number of difficulties that prevented them from substantially completing construction by the date specified in the loan agreement with MHFA. Id. MHFA granted Whitney an extension of the commitment, but Whitney was unable to make the deadline. Id. MHFA offered another extension to Whitney on a condition that Whitney would pay MHFA any arbitrage losses it might incur from the delays. Id. The managing general partner for Whitney signed the extension agreement, adding "signed by me under protest and reserving all my legal rights with respect thereto." Id. at 240. MHFA granted four more extensions and each one was signed by the partner as "accepted with prejudice." Id. When MHFA sought to enforce the arbitrage term in the extension agreements, Whitney argued that there had been no meeting of the minds as to the terms of the extensions as evidenced by the begrudged signatures.Id. at 241.
The Massachusetts Court of Appeals held that there was a valid agreement between the parties. Id. at 241-42. The court noted that Whitney's notations on the agreements "expressed distress about *** the arbitrage condition, not a rejection of it." Id. In rejecting Whitney's arguments, the court stated: "[Whitney's general partner] accepted the terms of the extension with his fingers crossed behind his back *** it lies ill in Whitney's mouth, after obtaining what it needed, to disavow the arbitrage condition." Id. at 242.
In Price v. Oklahoma Coll. of Osteopathic Med. and Surgery (1986),733 P.2d 1357, a tenured professor signed his annual contract renewal with the following language: "signed under protest that salary does not reflect guarantees under present and past personnel policies and that proper evaluation procedures were not followed." Id. at 1358. The college, citing Dr. Price's signed protest on the employment contract, declared his faculty position vacant "due to the absence of a valid [employment] contract." Id. at 1360. The Oklahoma Court of Appeals held that there was a binding contract between the college and Dr. Price when Dr. Price signed the contract and returned it to the college. Id. at 1362. Dr. Price's protest language did not alter any term of the college's offer; rather he unequivocally accepted each and every term of the offer. Id.
Whitney House and Price demonstrate that a mere protest, no matter how specific or verbose, does not in and of itself qualify an otherwise unequivocal acceptance. Stated another way, a "grumbling acceptance" is a valid acceptance provided the grumbling "does not go so far as to make it doubtful that the expression is really one of assent." 1 Perillo, Corbin on Contracts (Ed.Rev. 1993), 472, Section 3.30.
In this case, when appellant signed the replacement agreement and the release, paid the MSRP difference of $2,200 with cash, and took possession of the new truck, he unequivocally accepted Ford's offer in accordance with Ford's directions. Appellant's "protest" did not alter the terms of Ford's offer such that his purported acceptance became a counteroffer. Appellant's signature "under protest" amounted to nothing more than a "grumbling acceptance." Apparently, appellant accepted the offer in every respect, but with his fingers crossed behind his back. To paraphrase the Massachusetts Court of Appeal, it lies ill in appellant's mouth, after obtaining the brand new vehicle he and his attorney bargained for, to disavow the release.
Finally, appellant appears to argue that he agreed to the release under duress because Mel Farr had "dismantled" his truck shortly after he arrived. Appellant maintains that he needed his truck for his business and personal use so he had no choice but sign the release against his will and take the new truck.
A release of liability procured through fraud in the inducement is voidable, but can be contested only after the releasor return or tenders back the consideration he received for making the release. Haller v.Borror Corp. (1990), 50 Ohio St.3d 10, paragraph two of the syllabus. Fraud in the inducement exists where the plaintiff, while admitting he released his claim for damages and received consideration, asserts that he was induced to do so by the defendant's fraud, misrepresentation, coercion, or duress. Id. at 14.
Appellant's claim that he signed the release under duress is specious. Although appellant glibly claims that Mel Farr "dismantled" his truck, he fails, pursuant to App.R. 16(A)(6), to cite any facts on the record to support his argument. Rather, it appears from appellant's deposition testimony that the "dismantling" of the truck occurred when Mel Farr transferred the accessories from appellant's 1993 truck to the new truck in accordance with the replacement agreement he negotiated with Ford. Even if Mel Farr or Ford induced appellant to sign the release under duress, appellant cannot contest the validity of the release. As consideration for signing the release, appellant received a brand new truck outfitted with the accessories appellant had purchased for his old truck. Appellant drove the 1996 truck for three years and eventually used it as a trade-in toward another Ford truck in 1999. There is no evidence in the record that appellant returned or offered to return the truck to Ford at any time. Therefore, appellant is barred from contesting the validity of the release on the basis that it was obtained as a result of fraud in the inducement.
A valid release of a cause of action for damages is an absolute bar to a later action on any claim encompassed within the release. Haller,50 Ohio St.3d at 13. Appellant executed a valid release of all claims he possessed regarding his 1993 Ford F-350 truck. Appellant, therefore, is absolutely barred from filing suit against Ford claiming retrospectively that his truck was a lemon. The trial court correctly granted summary judgment to Ford.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.